UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN HARRIS ANECHIARICO,

                Plaintiff,

v.                                          6:15-CV-0163
                                            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OFFICE OF PETER M. HOBAICA, LLC<br>  Counsel for Plaintiff<br>2045 Genesee St.<br>Utica, NY 13501 | B. BROOKS BENSON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | JOSHUA L. KERSHNER, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 22.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by John Harris Anechiarico ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties'

cross-motions for judgment on the pleadings. (Dkt. Nos. 14, 21.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied, and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 11, 1970. (T. 171.) He received his GED. (T. 224.) Generally, Plaintiff's alleged disability consists of schizophrenia, bi-polar disorder, obsessive compulsive disorder ("OCD"), and diabetes. (T. 223.) His alleged disability onset date is January 7, 2013. (T. 66.) His date last insured is June 30, 2016. (T. 67.) He previously worked as a taxi driver and doorman. (T. 213.)

### B. Procedural History

On January 8, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 17.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 9, 2013, Plaintiff appeared before the ALJ, Roseanne M. Dummer. (T. 33-65.) On January 2, 2014, ALJ Dummer issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 14-32.) On January 12, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 19-28.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful activity since January 7, 2013. (T. 19.) Second, the ALJ found that Plaintiff had the severe impairments of obstructive sleep apnea; generalized anxiety disorder; history of paranoid schizophrenia, currently stable; depression, NOS; diabetes mellitus; and obesity. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1 ("the Listings"). (T. 20-21.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with additional non-exertional limitations. (T. 21.) The ALJ found that Plaintiff should not climb ladders/ropes/scaffolds and should not work around unprotected heights. (*Id.*) The ALJ found that Plaintiff was able to understand, remember, and carry out short, simple instruction; was able to maintain attention for simple tasks for extended periods of two hour segments in an eight hour day; was able to tolerate brief and superficial contact on an occasional basis with co-workers, supervisors, and the general public; and was able to adapt to changes as needed for simple, routine, repetitive type tasks. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 26-28.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the AC committed error because they failed to provide an explanation for denying review of newly submitted evidence.  (Dkt. No. 14 at 15-18 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the AC failed to afford Plaintiff's treating source opinion, that Plaintiff met a Listing, controlling weight and further the AC failed to provide adequate reasoning to support its determination.  (*Id.* at 18-20, 20-22.)  Third, Plaintiff argues the AC erred in affirming the "great weight" that the ALJ afforded to the non-examining State agency consultant.  (*Id.* at 22-23.)  Fourth, and lastly, Plaintiff argues the ALJ's step five determination was in error.

### B. Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the evidence submitted to the AC did not require remand, the ALJ properly assigned weight to the opinion evidence in the record, and the ALJ's step three findings and RFC determination were supported by substantial evidence.  (Dkt. No. 21 at 6-16 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence.  (*Id.* at 16.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

4

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

5

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Evidence Submitted to the AC

"[N]ew evidence submitted to the [AC] following the ALJ's decision becomes part of the administrative record for judicial review when the [AC] denies review of the ALJ's decision." *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996). "The only limitations stated in

6

[20 C.F.R. §§ 404.970(b) and 416.1470(b) ] are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision." *Id.*

Once evidence is added to the record, the AC must then consider the entire record, including the new evidence, and review a case if the "administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). If the AC denies review of a case, the ALJ's decision, and not the AC's decision, is the final agency decision. *See Perez,* 77 F.3d at 44. When the AC denies review in a case, the review focuses on the ALJ's decision. *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015); *See* 42 U.S.C. § 405(g) ("Any individual, after any *final decision* of the Commissioner ..., may obtain a review of such decision by a civil action...." (emphasis added)).

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision. *See Perez v. Chater,* 77 F.3d 41, 45 (2d Cir.1996). Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46; *Lesterhuis*, 805 F.3d 87.

Plaintiff argues the AC erred in failing to apply the treating physician rule. (Dkt. No. 14 at 16-17 [Pl.'s Mem. of Law].) However, the Second Circuit in *Lesterhuis* clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's

7

final decision. *Lesterhuis*, 805 F.3d 87. Therefore, this court will review the ALJ's determination, not the AC's determination, in light of the new evidence as directed by *Lesterhuis*. *See Pelow v. Colvin*, No. 6:14-CV-06529, 2015 WL 8516555, at *3 (W.D.N.Y. Dec. 11, 2015) ("This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence from [plaintiff] is included in the administrative record.); *Ryder v. Colvin*, No. 1:15-CV-00241, 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015) ("This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence is included in the administrative record. Because the ALJ's decision was the final agency decision, the Court will not address plaintiff's arguments regarding the Appeals Council's alleged errors in considering the new evidence.").

The Second Circuit has held that the AC did not err in refusing review based on new evidence because the new evidence did not alter the weight of the evidence so dramatically as to require the AC to take the case. *Bushey v. Colvin*, 552 Fed.Appx. 97, 98 (2d Cir. Jan. 29, 2014) ("We do not believe that the Appeals Council erred by refusing to review the ALJ's decision in light of the new evidence that Bushey submitted to that body. The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").

Accordingly, the issue before the Court is whether Dr. Hudyncia's medical source statement altered the weight of the evidence so dramatically as to require the AC to take the case. This Court finds that it did not.

## B. The ALJ's Determination and New Evidence

Plaintiff essentially argues that the new evidence supplied by Stephen Hudyncia, M.D., would require a finding that Plaintiff met Listing 12.02 and 12.04 and that Plaintiff would be incapable of the basic mental demands of work. (Dkt. No. 14 at 15-24 [Pl.'s Mem. of Law].) For the reasons stated herein, it is recommended that the ALJ's determination be upheld.

### a. Dr. Hudyncia and the Treating Physician Rule

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

First, Dr. Hudyncia was not a treating physician and thus not subject to the treating physician rule. Dr. Hudyncia saw Plaintiff twice, once on June 27, 2013 for 45

9

minutes and once on July 25, 2013 for 15 minutes. (T. 611, 621.) Dr. Hudyncia did not have an ongoing treatment relationship with Plaintiff which was crucial in establishing a treating physician role, and therefore was not a treating physician for the purposes of the treating physician rule. (T. 611-612, 620-621); *Petrie v. Astrue,* 412 F. App'x 401, 405 (2d Cir.2011) (treating sources who see a patient only once or twice do not have a chance to develop an ongoing relationship with the patient and thus are generally not considered treating physicians); *Schisler v. Bowen,* 851 F.2d 43, 46 (2d Cir.1988) (defining a "treating physician" as a physician "who has or had an ongoing treatment and physician-patient relationship with the individual"); *Lasitter v. Astrue*, No. 2:12-CV-112, 2013 WL 364513, at *6 (D. Vt. Jan. 30, 2013) (treating source who saw plaintiff twice did not have an ongoing relationship with plaintiff).

In *Mongeur v. Heckler,* the Second Circuit emphasized that the opinion of a treating physician is given extra weight because of his unique position resulting from the "continuity of treatment he provides and the doctor/patient relationship he develops." 722 F.2d at 1039 n. 2 (2d Cir. 1983). By contrast, the court reasoned that a physician who examined a plaintiff only "once or twice" did not see the plaintiff regularly and thus did not develop a physician/patient relationship with him. *Id.* The Second Circuit concluded that such a physician's medical opinion was "not entitled to the extra weight of that of a 'treating physician.' " *Id.* Dr. Hudyncia met with Plaintiff twice and spent a total of one hour with Plaintiff, which would not provide the opportunity for the doctor and Plaintiff to establish a treating physician relationship. Therefore, the evidence submitted by Dr. Hudyncia was not entitled to controlling weight, or any special weight, because he was not a treating physician.

10

The ALJ discussed Dr. Hudyncia's psychiatric evaluation and objective observations in his decision; however, the ALJ did not classify Dr. Hudyncia as a treating physician. (T. 23-24.) The ALJ's treatment of Dr. Hudyncia as a non-treating source was supported by substantial evidence. As outlined above, Dr. Hudyncia met with Plaintiff twice, once for an evaluation and once for medication management, for a total of one hour. At the time of the hearing an ongoing treatment relationship had not developed between doctor and patient; therefore, Dr. Hudyncia was not Plaintiff's treating provider and was not subject to the treating physician rule.

### b. Substantial Evidence Supported ALJ's Determination

As stated by Defendant, a review of the record reveals that there is not a single shred of objective medical evidence, from any source, that supports Dr. Hudyncia's opinion. (Dkt. No. 21 at 11 [Def.'s Mem. of Law].) First, as stated herein, Dr. Hudyncia was not a treating physician. Second, the entire record, including Dr. Hudyncia's own treatment observations, contradicted the limitations outlined in his medical source statement. Third, there were not additional pieces of evidence before the ALJ which supported Dr. Hudyncia's opinion. Therefore, the additional evidence submitted to the AC failed to "tip the balance of the record such that the ALJ's decision would no longer be supported by substantial evidence." *Hannon v. Comm'r of Soc. Sec.,* No. 15-CV-4035, 2016 WL 3369619, at *11 (S.D.N.Y. June 17, 2016).

In his medical source statement, Dr. Hudyncia opined that Plaintiff had "marked" limitations in his ability to understand and remember simple instructions and in his ability

to carry out simple instructions. (T. 827.)[1] Dr. Hudyncia opined that Plaintiff had "extreme" limitations in his ability to make judgments on simple work-related decisions; understand and remember complex instructions; carry out complex instructions; make judgments on complex work-related decisions; and in his ability to interact appropriately with supervision, co-workers, and the public as well as respond to changes in the routine work setting. (T. 827-878.) Dr. Hudyncia opined that Plaintiff had "marked" limitations in his ability to complete activities of daily living; "extreme" limitations in his ability to maintain social functioning; and "extreme" limitations in his ability to maintain concentration, persistence or pace. (T. 832.) Dr. Hudyncia checked the box indicating Plaintiff had a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. (T. 833.)

For the reasons outlined herein, the limitations opined to by Dr. Hudyncia were inconsistent with all other contemporaneous medical evidence in the record and the record failed to provide support for Dr. Hudyncia's limitations. Therefore, even with the addition of Dr. Hudyncia's medical source statement, substantial evidence supported the ALJ's determination.

Plaintiff received some mental health care from Thomas Schwartz, M.D. In October of 2011, Dr. Schwartz conducted an initial evaluation. (T. 266.) Dr. Schwartz noted Plaintiff was anxious, constricted, and euthymic. (T. 269.) He noted on exam that Plaintiff's thought process was organized, his perceptions were appropriate, his thought content was reality based, his motor/behavior was hyperactive with mild foot

---

[1] "Marked" is defined as a "serious limitation" with "substantial loss in the ability to effectively function." (T. 827) "Extreme" is defined as a "major limitation" with "no useful ability to function." (*Id.*)

tapping and rocking, he was cooperative, his concentration was good, his insight and judgment were good, and his attention was good. (*Id.*) In February of 2012, Dr. Schwartz noted Plaintiff's mood was anxious and constricted. (T. 272.) Dr. Schwartz again indicated that Plaintiff's thought process was organized, his perceptions were appropriate, his thought content was reality based, his motor/behavior was hyperactive with mild foot tapping and rocking, he was cooperative, his concentration was good, his insight and judgment were good, and his attention was good. (T. 273.) Dr. Schwartz noted Plaintiff had a low lethality risk.

Plaintiff received treatment for his diabetes and other impairments with the Slocum-Dickson Medical Group ("Slocum"). Records from Slocum occasionally included mental status examinations, all of which were normal. (T. 285, 295, 314, 325, 336, 343.)

Plaintiff began receiving mental health treatment with the Upstate Cerebral Palsy Community Health and Behavioral Services in June of 2013. On June 27, 2013, Plaintiff met with Dr. Hudyncia for an initial psychiatric evaluation. (T. 611.)[2] At that time Dr. Hudyncia noted that until recently Plaintiff had been working, he had not experienced decompensation over the past ten years, and he had been taking his medication consistently. (*Id.*) On examination, Dr. Hudyncia noted Plaintiff was polite with somewhat constricted affect and appeared to be of average intelligence with no obvious acute psychiatric symptoms. (T. 612.) On July 25, 2013, Dr. Hudyncia provided medical management. (T. 620-621.) Dr. Hudyncia noted that Plaintiff's symptom of hearing voices was "controlled," his symptoms of depression were

---

[2] It appears from the notations that Dr. Hudyncia met with Plaintiff on June 27, 2013, but signed his notations on July 10, 2013. (T. 611-612.)

"controlled," his symptoms of paranoia were "mild," and his symptoms of anxiety were "stable." (T. 620.) Dr. Hudyncia noted Plaintiff's mood was euthymic. (*Id.*) Those are the only treatment notations provided by Dr. Hudyncia.

Plaintiff also received mental health counseling from Joanne McPherson, LCSW-R, CASAC. Ms. McPherson noted on May 30, 2013, that Plaintiff was anxious during the interview, but responsive and cooperative. (T. 619.) She noted that Plaintiff's memory was good and his thought process was organized. (*Id.*) Ms. McPherson met with Plaintiff again on June 13, 2013. (T. 617.) Plaintiff reported he was depressed because he had no cable, no internet, and no friends. (*Id.*) He reported that his mood improves when with people and he was a "social person." (*Id.*) On July 3, 2013, Plaintiff reported that he felt "somewhat improved" and contributed his improvement to obtaining cable TV and internet. (T. 616.) He also reported that he was looking for employment to "fill his time and develop a routine while he waits for his disability." (*Id.*) Ms. McPherson did not complete a mental status examination during this session. (*Id.*) Plaintiff did not show for his August 2013 appointment. (T. 615.) On October 28, 2013 Ms. McPherson noted Plaintiff was well groomed and reported that his depression had improved. (T. 614.) Plaintiff cancelled his November 20, 2013 appointment. (T. 613.)

Plaintiff underwent a consultative examination on March 27, 2013. (T. 390-394.) During that examination, Jeanne Shapiro, Ph.D., observed that Plaintiff was responsive and cooperative and his manner of relating, social skills, and overall presentation was adequate. (T. 391.) She further observed that he was appropriately dressed, well groomed, and made appropriate eye contact. (*Id.*) She noted his thought process was coherent, goal directed with no evidence of hallucinations, delusions, or paranoia. (T.

14

392.) Dr. Shapiro noted Plaintiff's mood was "fairly calm." (*Id.*) She observed that his attention and concentration were intact, he was able to do counting, simple calculations, and serial 3s. (*Id.*) She observed that his recent and remote memory skills were intact. (*Id.*) She noted his cognitive functioning appeared to be average and his insight and judgment were fair. (*Id.*) Plaintiff reported to Dr. Shapiro that he was able to care for his personal needs, manage money, got along with friends and family "some of the time." (*Id.*)

In a medical source statement, Dr. Shapiro opined that Plaintiff did not appear limited in his ability to follow and understand simple instructions and directions, perform simple and complex tasks independently, maintain a regular schedule, learn new tasks, and maintain attention and concentration. (T. 392-393.) She opined that Plaintiff appeared mildly limited in his ability to make appropriate decisions. (T. 393.) She opined that Plaintiff appeared moderately limited in his ability to relate adequately with others and mildly limited in his ability to deal with stress. (*Id.*)

A non-examining State agency medical consultant, J. Echevarria, reviewed Plaintiff's record as of April 5, 2013. (T. 73.) Dr. Echevarria completed a psychiatric review technique form. (T. 72.) Therein, he opined that based on the evidence in the record, Plaintiff met the "A" criteria of Listing 12.03, 12.04, and 12.06. (*Id.*)[3] He opined

---

[3] In general, if an ALJ determines that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii)(d), 416.920(a)(4)(iii)(d). The impairments listed in the Listings are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at §§ 404.1525(a), 416.925(a). If a plaintiff's impairment, or combination of impairments, matches one listed in the Listings, and satisfies the duration requirement in 20 C.F.R. §§ 404.1509, 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* at §§ 404.1520(d), 416.920(d).

that Plaintiff did not meet the "B" criteria of the Listings; specifically, Plaintiff had mild limitations in: activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace. (*Id.*) He opined the evidence did not establish the "C" criteria of the Listings. (*Id.*) Dr. Echevarria then provided an explanation to support his findings. (T. 72-73.) Dr. Echevarria also provided an RFC evaluation. (T. 74.) Dr. Echevarria essentially opined that based on the consultative examination and evidence in the record, Plaintiff could perform simple tasks. (T. 74.)

Dr. Hudyncia's limitations were further not supported by Plaintiff's own testimony. Plaintiff reported that he was able to live alone, care for his own personal needs, do housework and chores, go out alone every day, go grocery shopping a couple times a week, go to the movies, and spend time with family. (T. 238-242.) Plaintiff reported that he had problems paying attention, but could finish what he started. (T. 244.) He reported he could follow spoken and written instruction. (*Id.*) He reported he had

---

To match an impairment listed in the Listings, a plaintiff's impairment "must meet all of the specified medical criteria" of a Listing. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Although an ALJ may award benefits at step three, a plaintiff who fails to prove her impairment matches or equals one listed in the Listings is not denied benefits, but rather, the ALJ must proceed to step four. *See id.* at §§ 404.1520(e), 416.920(e).

To satisfy the criteria of Listings 12.03, 12.04, 12.06, Plaintiff must meet the requirements of paragraph A and either paragraph B or paragraph C of the Listing. Paragraph B of each of these Listings requires that Plaintiff demonstrate that her mental impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Or, in the alternative, paragraph C of Listings requires at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Paragraph C of Listing 12.06 requires an anxiety-related disorder "[r]esulting in complete inability to function independently outside the area of one's home." *Id.* at Sec. 12.06(C).

16

problems getting along with people in authority, but indicated he never lost a job due to problems getting along with others. (*Id.*)

Objective observations made by Dr. Hudyncia, Dr. Schwartz, providers at Slocum, Ms. McPherson and Dr. Shapiro consistently reported normal mental status examinations. There is nothing in the record that would support the limitations Dr. Hudyncia opined to in his medical source statement.

Specifically, the ALJ's step three determination was supported by the opinion of Dr. Echevarria and Plaintiff's testimony. As outlined herein, Dr. Echevarria opined that Plaintiff did not meet a Listing. Further, Plaintiff's own testimony, also outlined herein, supported the ALJ's step three determination. There is nothing in the medical evidence to support Dr. Hudyncia's statements that Plaintiff met a Listing. In addition, although a medical source may opine that a plaintiff meets or equals a Listing, the final responsibility of determining whether or not an impairment meets or equals a Listing is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ's RFC determination was supported by substantial evidence in the record. The ALJ properly relied on the medical opinions of Dr. Shapiro and Dr. Echevarria as well as the objective medical observations of Ms. McPherson, Dr. Hudyncia, and treating providers at Slocum. (T. 23-24.) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), and 416.927(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both

examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015), *adopting Report & Recommendation*, (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions" by same plaintiffs' counsel)); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02-CCV-3561, 2004 WL 99935, at *9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Therefore, the ALJ did not err in providing greatest weigh to the opinions of the State agency examiners in making his RFC determination.

Plaintiff argues that because the ALJ's RFC determination was made in error, the VE testimony cannot provide substantial evidence to support the ALJ's ultimate determination. (Dkt. No. 14 at 23-24 [Pl.'s Mem. of Law].) Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

In sum, substantial evidence supported the ALJ's step three, step four and ultimately step five determination because even with the addition of the new evidence substantial evidence still supported the ALJ's determination. The newly submitted evidence was wholly inconsistent and unsupported by the medical evidence in the record; therefore, substantial evidence already in the record supported the ALJ's determination and the addition of the new evidence did not warrant remand. **ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 12, 2016

William B. Mitchell Carter
U.S. Magistrate Judge